**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PHILLIP REHWALD, | ) | |
| | ) | |
| Petitioner, | ) | 20-689 |
| | ) | |
| v. | ) | **ELECTRONICALLY FILED** |
| | ) | |
| SUPERINTENDENT ZAKEN, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM

Pending before the Court is the Amended Petition for a Writ of Habeas Corpus (Doc. 136) filed by Phillip Rehwald ("Petitioner") under 28 U.S.C. § 2254. Petitioner challenges the judgment of sentence imposed on him by the Court of Common Pleas of Allegheny County at criminal docket number CP-02-CR-6354-2015. For the reasons that follow, the Court will deny the petition and will deny a certificate of appealability.

**I.      Relevant Background**

In December 2015, Petitioner was convicted at a jury trial of two counts of sexual abuse of children and one count of invasion of privacy. The charges against him stemmed from an incident in which Petitioner recorded a video of his 14-year-old female neighbor getting out of the shower. He later transferred the video to a computer. On February 23, 2015, he was sentenced to an aggregate term of 11½ to 23 months' imprisonment plus 5 years' probation. The court also, *inter alia*, ordered him to receive of sex offender treatment. He filed, but later discontinued, a direct appeal from this judgment of sentence.

Petitioner was subsequently released on parole, but his probation was then revoked. He was again released from jail, but his probation was again revoked on August 5, 2019. He was at

that time re-sentenced to 2 to 8 years' imprisonment and required to register as a sex offender for 25 years.

He filed, but later discontinued, a direct appeal from this judgment of sentence.

Petitioner then filed a petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46. The trial/PCRA court dismissed the PCRA petition. Petitioner filed an appeal from the denial.

On May 26, 2023, the Superior Court of Pennsylvania affirmed the denial of the PCRA petition, finding all of Petitioner's claims to be waived for failure to develop them in a manner capable of appellate review. *Commonwealth v. Rehwald*, 299 A.3d 930 (Pa. Super. 2023) (unpublished memorandum) (Doc. 149-8 at 1-5). Petitioner did not file a petition for allowance of appeal with the Supreme Court of Pennsylvania.

Petitioner filed the instant timely petition for writ of habeas corpus in May of 2020. The case was subsequently stayed pending the conclusion of state court proceedings. (Doc. 7). Upon the conclusion of those proceedings, the case was reopened. (Doc. No. 131). Petitioner field the Amended Petition *sub judice*. (Doc. 136). Respondents filed an answer (Doc. 149), and Petitioner filed a reply. (Doc. 154).

**II.     Discussion**

    A.     Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 2254, the federal habeas statute applicable to prisoners in custody pursuant to a state court judgment. This statute permits a federal court to grant a state prisoner a writ of habeas corpus "on the ground that he or she is in custody in violation of the Constitution…of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *Id.*; *see, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is Petitioner's

burden to prove that he is entitled to the writ. *See, e.g.*, *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017).

    B.   <u>Standard of Review</u>

  In 1996, Congress made important amendments to the federal habeas statutes with the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Among other things, AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 403-04 (2000)). It reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (internal quotations and citation omitted).

  A finding of fact made by a state court has always been afforded considerable deference in a federal habeas proceeding. AEDPA continued that deference and mandates that "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

  AEDPA also put into place a new standard of review, which is codified at 28 U.S.C. § 2254(d). In this Court, it applies "to any claim that was adjudicated on the merits" by the Superior Court of Pennsylvania and prohibits a federal habeas court from granting relief unless the petitioner established that the Superior Court's "adjudication of the claim":

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). For the purposes of § 2254(d), a claim has been "adjudicated on the merits in State court proceedings" when the state court (here, the Superior Court) made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground. *See, e.g.*, *Richter*, 562 U.S. at 98-100; *Robinson v. Beard*, 762 F.3d 316, 324 (3d Cir. 2014).

Subsection § 2254(d)(1) applies to questions of law and mixed questions of law and fact. A state-court adjudication is "contrary to…clearly established Federal law, as determined by the Supreme Court of the United States" § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," *Williams*, 529 U.S. at 405, or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent," *id.* at 406. A "run-of-the-mill" state-court adjudication applying the correct legal rule from Supreme Court decisions to the facts of a particular case will not be "contrary to" Supreme Court precedent. *Williams*, 529 U.S. at 406. Thus, the issue in most federal habeas cases is whether the adjudication by the state court survives review under § 2254(d)(1)'s "unreasonable application" clause.

"A state court decision is an 'unreasonable application of federal law' if the state court 'identifies the correct governing legal principle,' but 'unreasonably applies that principle to the facts of the prisoner's case.'" *Dennis v. Sec'y, Pennsylvania Dep't of Corr.*, 834 F.3d 263, 281 (3d Cir. 2016) (en banc) (quoting *Williams*, 529 U.S. at 413). To satisfy his burden under this provision of AEDPA's standard of review, Petitioner must do more than convince this Court that the Superior Court's decision was incorrect. *Id.* He must show that it "'was *objectively* unreasonable.'" *Id.* (quoting *Williams*, 529 U.S. at 409) (emphasis added by Court of Appeals).

4

This means that Petitioner must prove that the Superior Court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. As the Supreme Court noted:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *See Lockyer* [*v. Andrade*, 538 U.S. 63 (2003)]*, supra*, at 75, 123 S. Ct. 1166. If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.

*Id.* at 102.

The standard of review set forth at § 2254(d)(2) applies when a petitioner "challenges the factual basis for" the state court's "decision rejecting a claim[.]" *Burt v. Titlow*, 571 U.S. 12, 18 (2013).[1] "[A] state court decision is based on an 'unreasonable determination of the facts' if the state court's factual findings are 'objectively unreasonable in light of the evidence presented in the state-court proceeding,' which requires review of whether there was sufficient evidence to support the state court's factual findings." *Dennis*, 834 F.3d at 281 (quoting § 2254(d)(2) and citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Titlow*, 571 U.S. at 18 (quoting *Wood v. Allen*, 558 U.S. 290,

---

[1] Sections 2254(d)(2) and (e)(1) "express the same fundamental principle of deference to state court findings[,]" and federal habeas courts "have tended to lump the two provisions together as generally indicative of the deference AEDPA requires of state court factual determinations." *Lambert*, 387 F.3d at 235. The Court of Appeals has instructed that when it applies, § 2254(d)(2) provides the "overarching standard" that a petitioner must overcome to receive habeas relief, while 2254(e)(1) applies to "specific factual determinations that were made by the state court, and that are subsidiary to the ultimate decision." *Id.*

5

301 (2010)); *see Rice v. Collins*, 546 U.S. 333, 342 (2006) (reversing court of appeals' decision because "[t]he panel majority's attempt to use a set of debatable inferences to set aside the conclusion reached by the state court does not satisfy AEDPA's requirements for granting a writ of habeas corpus."). Thus, "if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede'" the state court's adjudication. *Wood*, 558 U.S at 301 (quoting *Collins*, 546 U.S. at 341-42).

        C.        Exhaustion and Procedural Default

The "exhaustion doctrine" requires that a state prisoner raise his federal constitutional claims in state court through the proper procedures before he litigates them in a federal habeas petition. *See, e.g.*, *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). It is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). It "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts[.]" *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Additionally, and importantly, a petitioner must have "invoke[d] one complete round of the State's established appellate review process[,]" in order to satisfy the exhaustion requirement. *O'Sullivan*, 526 U.S. at 845. In Pennsylvania, this requirement means that a petitioner in a non-capital case such as this one must have first presented every federal constitutional claim raised in his federal habeas petition to the Superior Court. *See, e.g.*, *Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004).

The doctrine of procedural default, like the doctrine of exhaustion, is "grounded in concerns of comity and federalism," *Coleman*, 501 U.S. at 730. To summarize, it provides that a

Pennsylvania state prisoner in a non-capital case defaults a federal habeas claim if he: (a) failed to present it to the Superior Court and he cannot do so now because the state courts would decline to address the claims on the merits because state procedural rules (such as, for example, the PCRA's one-year statute of limitations) bar such consideration; or (b) failed to comply with a state procedural rule when he presented the claim to the state court, and for that reason the Superior Court declined to address the federal claim on the merits. *See, e.g.*, *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *O'Sullivan*, 526 U.S. at 851-56 (Stevens, J. dissenting) (describing the history of the procedural default doctrine); *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Lines v. Larkins*, 208 F.3d 153, 162-69 (3d Cir. 2000).

A petitioner may avoid the default of a claim by showing "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]"*Coleman*, 501 U.S. at 750. "'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[.]" *Id.* at 753 (emphasis in original).

A petitioner may also overcome his default by demonstrating "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Commonly referred to as a "gateway" claim of actual innocence, it allows a court to excuse the procedural default of a claim if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" *Schlup v. Delo*, 513 U.S. 298, 316 (1995). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial."

*Id.* at 324. In only the extraordinary case will a petitioner be able to establish a "fundamental miscarriage of justice."

    D.  Petitioner's Claims

      1.  Ground One: *Gagnon I* hearing

In this ground, Petitioner lists multiple due process defects in the *Gagnon I*[2] hearing procedure before Common Pleas Judge Jill R. Rangos. (Doc. 136 at 5). For example, he cites the absence of an independent hearing officer, the lack of a transcript, and alleges that he did not receive notice of the hearing. *Id.* Judge Rangos was assigned this case in 2019 after the original trial judge retired. It was Judge Rangos who revoked Petitioner's probation on August 5, 2019. These are the probation revocation proceedings about which Petitioner complains.

Respondents argue that this claim is unexhausted and procedurally defaulted. (Doc. 149 at 14-15). Respondents are correct.

As set forth above, Petitioner discontinued his direct appeal from the judgment of sentence imposed on August 5, 2019. He did pursue a PCRA petition where he raised a challenge to the *Gagnon I* hearing procedure. (Doc. 149-6 at 47). However, the PCRA court found the issue to have been waived. (*Id.* at 63). Further, while Petitioner discussed this issue in his brief for the appeal from the PCRA court order, (Doc. 149-7 at 15-37), the Superior Court found Petitioner's "rambling and incoherent" appellate arguments to be so undeveloped as to prohibit meaningful appellate review and thus to be waived. (Doc. 149-8 at 4-5). Accordingly, this claim is unexhausted and procedurally defaulted.

---

[2] Parolees and probationers are entitled to certain minimal due process protections because of the possible deprivation of liberty inherent in parole and probation revocation proceedings. *Morrissey v. Brewer*, 408 U.S. 471, 484-88 (1972); *Gagnon v. Scarpelli*, 411 U.S. 778, 782-91 (1973). When a parolee or probationer is detained pending a revocation hearing, due process requires a determination at a preliminary hearing (a *Gagnon I* hearing) that probable cause exists to believe that a violation has been committed. *Morrissey*, 408 U.S. at 485. Where a finding of probable cause is made, a second, more comprehensive hearing (a *Gagnon II* hearing) is required before a final revocation decision is made. *Id.* at 487-88; *Gagnon*, 411 U.S. at 786.

Petitioner does not make any attempt to overcome the default *per se*;[3] instead, he asserts that this claim is "non-waivable," and thus cannot be procedurally defaulted. (Doc. 154 at 5). This assertion is simply inaccurate.

For these reasons, the Court will deny relief on Ground One.

### 2. Ground Two: Failure to Hold Preliminary Hearing

In this ground, Petitioner asserts that his due process rights were violated by the lack of preliminary hearing on "Count(s) I and II." (Doc. 136 at 7). Respondents argue that this claim, like Ground One, is unexhausted and procedurally defaulted. (Doc. 149 at 16). Respondents are correct.

This claim followed the same route as that in Ground One. Although Petitioner raised it to the PCRA court; the PCRA court found it to be waived, as did the Superior Court on appeal. (Doc. 149-6 at 63, Doc. 149-8 at 4-5). Accordingly, this claim is similarly unexhausted and procedurally defaulted. Further, as with Ground One, Petitioner's bald assertion that this claim is not procedurally defaulted, (Doc. 154 at 5), is unavailing.

For these reasons, the Court will deny relief on Ground Two.

### 3. Ground Three: Constitutionality of SORNA

In this ground, Petitioner asserts that Subchapter "H" of the Sexual Offender Registration and Notification Act ("SORNA") is unconstitutional. (Doc. 136 at 8.) As with the previous two claims, Respondents argue that this claim is unexhausted and procedurally defaulted. Again, Respondents are correct.

This claim followed a slightly varied route from that in Grounds One and Two, but it ended up in the same posture. On this claim, Petitioner raised it to the PCRA court, but the

---

[3] To the extent his actual innocence claim in Ground Four is raised in an effort to overcome this default, it is discussed below.

PCRA court found it to lack merit. (Doc. No. 149-6 at 63). However, as with all of Petitioner's PCRA appellate claims, the Superior Court found this claim to be waived. (Doc. 149-8 at 4-5). Accordingly, this claim is similarly unexhausted and procedurally defaulted.

For these reasons, the Court will deny relief on Ground Two.

4. Ground Four: Actual Innocence

In Ground Four, Petitioner asserts a "gateway" claim of actual innocence. (Doc. 136 at 10).[4] Respondents argue that he has failed to show the requisite elements of such a claim. (Doc. 149 at 18-19). Respondents are correct.

As set forth above, this type of claim requires a petitioner to support his allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup*, 513 at 324. The sole evidence Petitioner refers to with regard to this claim is a police report which describes the video at issue. (Doc. 136 at 10). He does not indicate that this police report is "new"[5] or that that it was not presented at trial. This failing is fatal to his claim.

---

[4] To the extent that Petitioner is raising a freestanding actual innocence claim based on this evidence (in addition to his gateway actual innocence claim discussed above) that claim is improperly raised but would be denied. In the Third Circuit, "[i]t has long been recognized that '[c]laims of actual innocence based on only newly discovered evidence' are never grounds for 'federal habeas relief absent an independent constitutional violation.'" *Fielder v. Varner*, 379 F.3d 113, 122 (3d Cir. 2004) (quoting *Herrera v. Collins*, 506 U.S. 390, 400 (1993)); *Albrecht v. Horn*, 485 F.3d 103, 121-22 (3d Cir. 2007). However, the Court of Appeals has acknowledged that the Supreme Court has yet to definitively resolve the issue. *Reeves v. Fayette Sci*, 897 F.3d 154, 160 n.4 (3d Cir. 2018). The Court of Appeals has further explained that to the extent freestanding actual innocence claims are cognizable, they must be "assessed under a more demanding standard [than a gateway actual innocence claim], since the petitioner's [freestanding] claim is that his conviction is constitutionally impermissible 'even if his conviction was the product of a fair trial[.]'" *Id.* (quoting *Schlup*, 513 U.S. at 316 and citing *House v. Bell*, 547 U.S. 518, 555 (2006)). If indeed a freestanding claim of actual innocence could be brought in a non-capital federal habeas case such as this one, Petitioner has fallen short of offering the type of evidence of innocence that would entitle him to habeas relief on such a claim given that he has not satisfied the lesser (although still demanding) standard that applies to gateway actual innocence claims.

[5] Indeed, the record reflects that Petitioner is referring to a police report dated April 21, 2015, authored by officer Ryan Ging. (Doc. 149-7 at 43). Ging testified at Petitioner's trial.

In any event, the police report is not strong evidence of actual innocence. It is inconceivable that a description of a video would be of any evidentiary value whatsoever when the actual video was shown to the jury at trial.

For these reasons, Petitioner has failed to establish a gateway claim of actual innocence.

### III. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue…only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner has not done so. Thus, a certificate of appealability is denied with respect to his claims.

### IV. Conclusion

For the reasons set forth herein, the Court will deny the petition and will deny a certificate of appealability.

An appropriate Order will issue.

s/ Arthur J. Schwab<br>
Arthur J. Schwab<br>
United States District Judge

Dated:  August 13, 2024

cc:   PHILLIP REHWALD
      NX8693
      SCI Greene
      175 Progress Drive
      Waynesburg, PA 15370
      (via U.S. First Class Mail)